In the Matter of Marvin H. THOMPSON, Doris M. Thompson, t/a W. Thompson & Sons, Debtors.

UNITED STATES of America, Plaintiff,

v.

Steven SCHWARTZ, Trustee, Defendant.

Bankruptcy No. 82–353.
Adv. No. 86–47.

United States Bankruptcy Court,
D. Delaware.

Aug. 20, 1987.

Charlene D. Davis, Asst. U.S. Atty., Wilmington, Del., for plaintiff.

Steven Schwartz, Dover, Del., trustee/defendant.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

The United States on behalf of the Farmers Home Administration (FmHA) has filed a complaint seeking a declaratory judgment and an order of distribution regarding proceeds from the sale of 34.3 acres and a lot by the trustee in the Chapter 11 bankruptcy case of Marvin and Doris Thompson (Thompsons). The undisputed facts of this case are as follows: The Thompsons obtained three loans from the FmHA prior to filing bankruptcy. The first loan (EM loan), obtained May 2, 1978 in the principal amount of $94,140, was to be repaid over 20 years at 3% interest. The second loan, (OL loan), also obtained on May 2, 1978, was in the principal amount of $40,860 to be repaid over seven years at 8% interest. FmHA's third loan (EE loan) to the Thompsons was made May 29, 1979 in the principal amount of $65,000 to be repaid over seven years at 9½% interest. The three loans are secured by real estate mortgages on three parcels of land. *See* Disclosure Statement at 5 (Doc. # C–18) *. The Thompsons filed bankruptcy under Chapter 11 on September 22, 1982, and the court confirmed their second amended plan of reorganization on July 5, 1983.

The confirmed plan provides that the Thompsons are to begin making periodic interest payments to FmHA in 1984 based upon the then-outstanding principal balance of each obligation. The plan also provides that specified roadside lots are to be sold free and clear of liens. Upon satisfaction of one senior mortgage on the real estate held by First National Bank of Harrington,

the plan directs that FmHA shall receive 80% of the net proceeds from the lot sales to be applied first to the EE loan until paid in full, and second to the OL loan until paid in full. Upon satisfaction of these two obligations, the plan states that the lot proceeds shall be applied to bring current any then-existing arrearages on the EM loan, and that any default of that loan will be waived. The plan provides that after the EM loan is brought current, debtors will resume regular payments of principal and interest for the remaining original contract term and FmHA will retain its lien on the remaining real estate.

The plan also includes a default provision which reads as follows:

Default in payment or other performance under the plan which is not cured within 60 days will constitute an event of default under the plan, in which event a trustee shall be appointed by the United States Trustee to liquidate so much of the Debtors' assets as may be necessary to pay creditors the full amount payable to them as provided in the plan, and to pay all administrative expenses. The Debtors hereby consent to the appointment of the trustee in case of such default. (Article VII, Doc. # C–83).

The Thompsons subsequently did default on their obligations under the plan and the court directed the appointment of a trustee pursuant to the default provision on September 24, 1984.

As of the time this complaint was filed, the trustee had liquidated all but two of the roadside lots and had used the proceeds to satisfy the OL and EE loans and bring the EM loan current. The trustee also sold 34.3 acres of land and Lot 28 after entering into a stipulation with the debtors' attorney, counsel for the unsecured creditors committee, and counsel for the FmHA in which the parties agreed that the FmHA would consent to the sale of the real estate free and clear of liens with the lien of the FmHA attaching to the proceeds of the

---

* The notation "C" with regard to a docket number designates that the item is docketed within main case file # 82–353. The notation "A" designates that the item is docketed within adversary file # A–86–47.

sale to the extent of the amount owing on the promissory note and mortgage (Doc. # C–120).

The distribution of the proceeds from the sale of these 34.3 acres and Lot 28 is the issue now before the court. In its complaint, the FmHA alleges that because of the stipulation, its lien attached to the sale proceeds and it is now entitled to an amount of the proceeds sufficient to satisfy the lien ($64,225.81 as of August 22, 1986, and accruing thereafter at the daily rate of $5.2414). The trustee, on the other hand, argues that the FmHA should be paid along with other creditors according to the plan since it was proper for the trustee to sell an asset encumbered by a lien of the FmHA, the FmHA is more than adequately secured, and the FmHA has been paid in full everything it was to receive under the plan. The parties agree that the Thompsons owe FmHA approximately $65,000 (Doc. # A–9) and that the remaining collateral subject to the mortgage—the Home Farm and the Grier Farm—is valued at approximately $191,000 (Doc. # A–10).

On February 4, 1986, the court did direct upon application of the trustee that the sale of the 34.3 acres and Lot 28 be free and clear of liens (Doc. # C–116). The United States on behalf of the FmHA moved for relief from the court's February 4 order, but the record reflects that the parties entered into the above-mentioned stipulation among themselves to resolve the matters raised in the motion.

The court finds and counsel for the FmHA admits that the FmHA is adequately secured at present. As noted above, approximately $65,000 remains outstanding on the FmHA obligation which is secured by approximately $191,000 of real estate. The OL and EE loans have been fully satisfied and the EM loan has been brought current. The FmHA is in as good a position under the debtors' plan as it would have been had there not been a default.

The purpose behind Chapter 11 is to reorganize and rehabilitate the debtors, not to liquidate their assets. The principles of fairness and equity as well as the legislative intent behind Chapter 11 dictate that the trustee in this case be permitted to carry out the terms of the plan and debtors be able to reorganize.

Counsel for the FmHA argues that denial of distribution of the proceeds to FmHA will result in a *sua sponte* modification of the plan by the court in violation of 11 U.S.C. § 1127. The court does not agree.

If the court were to accept FmHA's contention that the stipulation mandates full payment to it, the court would be approving a modification that did not comply with the provisions of § 1127 of Title 11. By this decision, the court is simply directing that the terms of the confirmed plan be carried out and FmHA retain its lien in the remaining real estate as provided for in the plan.

